UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

RANDY CUMMINGS, CRUZ GALLEGOS,
ROBERT J. GARCIA, RICHARD GONZALES,
ELOY A. JARAMILLO, DAVID LARRANAGA,
JOSEPH LOPEZ, RICK LOPEZ, DAVID
MONTANO, ANGELO RINALDI, CHRIS
SWEENEY, JOSH TILLINGHAST, TOMAS
TRUJILLO, JEFFREY S. WADE, JOSHUA
HOSELTON, CHARLES W. LEES, JAIME
MARQUEZ, ROBERT MENDOZA,
ARMANDO ANCHONDO, GUSTAVO
BERROSPE, REYES CABRIALES, SERGIO
ESCOBEDO, JASON HEAD, NICK HINOJOS,
ROBERT G. HITZMAN, MICHAEL LOPEZ,
JOSE RODRIGUEZ, SERGIO A. ROJO,
RICHARD TENORIO, CESAR TORRES,
GRANT WILLIS, HAROLD BROWN, RENE
CARRILLO, HENRY NEZ, JR., KURT
JOHNSON, JESUS AGUILAR-MURILLO,
MARTIN F. ALVAREZ, ARTHUR ARCHULETA,
ENRIQUE CORONA, RONALD HUBBARD,
ANDREW M. LUGO, HENRY LUJAN,
DAVID CARR, D. JEREMIAH CORDOVA,
KEVIN CHARVEA, NATHAN ESPALIN,
LEVI GUTIERREZ, DENNIS MOORE,
ROBERT MORENO, LEVI OLIVAS, THOMAS D.
PAYNE, and BRYAN WHEELER, on behalf of
themselves and all others similarly situated,

    Plaintiffs,

v.                                        No. 16 CV 951 JAP/KK

CELINA BUSSEY, SECRETARY OF THE
NEW MEXICO DEPARTMENT OF WORKFORCE
SOLUTIONS, and JASON DEAN, as the DIRECTOR OF
THE LABOR RELATIONS DIVISION OF THE NEW MEXICO
DEPARTMENT OF WORKFORCE SOLUTIONS, in
their individual capacities,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs allege that Defendants Celina Bussey, Secretary of the New Mexico Department of Workforce Solutions (Bussey, or the Secretary) and Jason Dean, the Director of the Labor Relations Division of the New Mexico Department of Workforce Solutions (Dean, or the Director) (together, Defendants) violated Plaintiffs' federal rights to procedural and substantive due process by failing to issue prevailing wage determinations in accordance with the New Mexico Public Works Minimum Wage Act (NMPWMWA, or the Act), NMSA 1978, §§ 13-4-10 to -17. *See* FIRST AMENDED COMPLAINT FOR VIOLATION OF PROCEDURAL AND SUBSTANTIVE PROCEDURAL [sic] DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983 (Doc. No. 2) (Complaint). Plaintiffs are individuals who performed work on government public works projects in the three years preceding the filing of the Complaint and who claim they did not receive the wages to which they were entitled under the Act. Compl. ¶¶ 1–7, 23. They seek to recover damages for themselves and all others similarly situated. Compl. ¶¶ 8. Defendants assert qualified immunity and ask the Court to dismiss the Complaint. *See* DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT BASED UPON QUALIFIED IMMUNITY (Doc. No. 17) (Motion). The Motion has been fully briefed. *See* PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT BASED UPON QUALIFIED IMMUNITY (Doc. No. 23) (Response); DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT BASED UPON QUALIFIED IMMUNITY (Doc. No. 25) (Reply). The Court will grant the Motion in part and deny the Motion in part.

## I. BACKGROUND[1]

In New Mexico, contracts for the "construction, alteration, demolition, or repair of public buildings, public works, or public roads in excess of $60,000 to which the State or any political subdivision of the State is a party [are] required to contain a provision stating the minimum wages and fringe benefits for all trades which perform work on the project." Compl. ¶ 13. The NMPWMWA sets forth the procedure by which the Director must determine these minimum wages and fringe benefits. Compl. ¶ 14; NMSA 1978, § 13-4-11(B). Before § 13-4-11(B) was amended in 2009, it required the Director to "conduct a continuing program for the obtaining and compiling of wage-rate information," to "encourage the voluntary submission of wage-rate data by contractors, contractors' associations, labor organizations, interested persons and public officers," and to "give due regard to the information thus obtained" before determining the wage rates for any project. NMSA 1978, § 13-4-11(B) (2005). Other than "due regard" the statute did not specify any relationship between the data obtained by the Director and the wage rates then set for public works projects. But in 2009, the Act was amended to specifically require that the Director

> determine prevailing wage rates and prevailing fringe benefit rates for respective classes of laborers and mechanics employed on public works projects at the same wage rates and fringe benefit rates used in collective bargaining agreements between labor organizations and their signatory employers that govern predominantly similar classes or classifications of laborers and mechanics for the locality of the public works project and the crafts involved.

NMSA 1978, § 13-4-11(B) (2009). If no local collective bargaining agreements (CBAs) exist that are applicable to the class of labor, the Director must look to the nearest and most similar location or labor classification for which a CBA does exist. § 13-4-11(B)(1). While "any

---

[1] Facts are drawn from allegations in the Complaint or from agency and court documents undisputed by the parties, of which the Court may take judicial notice. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

interested person" still has the right to submit information to which the Director must "give due regard," § 13-4-11(B)(2)–(3), the rates and benefits must be set according to CBAs. *See N.M. Bldg. & Constr. Trades Council v. Dean*, 2015-NMSC-023, ¶ 21, 353 P.3d 1212 (issuing "writ of mandamus ordering the Director to comply with the Act and set rates in accordance with CBAs").

Before the July 1, 2009 effective date of the amendments, a group of nonunion contractors challenged the Act as unconstitutional, alleging violations of due process and equal protection because the Act required prevailing wages to be determined according to union CBAs. *See* COMPLAINT FOR DECLARATORY JUDGMENT, TO HOLD A STATUTE UNCONSTITUTIONAL AND VOID AS THE STATUTE VIOLATES PLAINTIFFS' DUE PROCESS, EQUAL PROTECTION, THE PUBLIC POLICY OF THE STATE OF NEW MEXICO AND FOR INJUNCTIVE RELIEF, *N.M. Associated Builders & Contractors v. Dep't of Workforce Solutions*, No. 09-CV-546 WJ/ACT (D. N.M. June 4, 2009), Doc. No. 1 (2009 Complaint). Labor union organization New Mexico Building and Construction Trades Council (NMBCTC) moved to intervene in defense of the Act, but District Judge William Johnson denied the motion. *See* MEMORANDUM OPINION & ORDER DENYING MOTION TO INTERVENE, *N.M. Associated Builders & Contractors v. Dep't of Workforce Solutions*, No. 09-CV-546 WJ/ACT (D. N.M. Aug. 20, 2009), Doc. No. 24. While the suit was pending, the same nonunion contractors also filed an administrative appeal challenging the regulations adopted on December 9, 2009 to implement the amended Act. *See* Mot. Ex. A, Appeal to the Labor & Industrial Commission (LIC). The notice of appeal referenced the pending federal case under the statute and argued that the regulations were invalid for substantially the same reasons, in addition to challenging the rulemaking process. *Id.*

Judge Johnson dismissed the 2009 Complaint for lack of standing because the nonunion contractors had not demonstrated imminent injury to a protected interest, leaving the merits of the claim undecided. *See* MEMORANDUM OPINION & ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, *N.M. Associated Builders & Contractors v. Dep't of Workforce Solutions*, No. 09-CV-546 WJ/ACT (D. N.M. Mar. 9, 2010), Doc. No. 39. On July 7, 2010, the LIC denied the administrative appeal on the grounds that the Director had substantially complied with the rulemaking process and that any substantive objections to the regulations were either without merit or beyond the purview of the Commission because they were rooted in objections to the statute itself. *See* Mot. Ex. B, Administrative Opinion & Order. However, the LIC stayed the new regulations pending the resolution of any judicial appeal or the expiration of the time in which an appeal could be filed. *Id.*

The nonunion contractors continued to challenge the Act. In two separate actions in July and August of 2010, they appealed the LIC's decision to the State of New Mexico First Judicial District Court. *See* Mot. Ex. C, 2011 Petition for Writ of Mandamus ¶¶ 51–58. They also appealed two subsequent decisions by the LIC that had dismissed their attempts to administratively appeal two announcements by the then-Director of the Labor Relations Division, one that sought the voluntary submission of information needed to set prevailing wage rates for 2011 under the Act, and a second that contained notice of a hearing scheduled for setting those 2011 rates. *Id.* ¶¶ 59–72. Finally, on December 23, 2010, they filed an appeal with the LIC from the notice of new prevailing wage rates that were scheduled to take effect in 2011. *Id.* ¶¶ 73–74.

Any interested person may appeal a determination of the Director to the LIC. NMSA 1978, § 13-4-15. Within ten days of filing the appeal, the LIC must set a hearing to be held

within 30 days, and must then issue a decision within ten days after that hearing. *Id.* Accordingly, the LIC scheduled a hearing on the appeal from the proposed 2011 rates to be held January 19, 2011. But on January 13, two of the three members of the LIC were removed from their positions, effective immediately, by newly-elected New Mexico Governor Susana Martinez. *See* Mot. Ex. C, 2011 Petition for Writ of Mandamus ¶¶ 27, 77. The nonunion contractors then moved the LIC to vacate the hearing, which it did. *Id.* ¶ 78. Governor Martinez appointed two new LIC members on January 27, 2011, one of whom was the President of a group of nonunion contractors involved in these appeals. *Id.* ¶¶ 34–35. The Governor also appointed Secretary Bussey, who had previously been an executive officer of one of the nonunion groups challenging the Act. *Id.* ¶¶ 27–28. Despite its statutory mandate, the reconstituted LIC did not reschedule the hearing, and the rates calculated for 2011 did not take effect. *Id.* ¶¶ 45–46, 81; *see* NMAC 11.1.2.16(B)(1) (filing of notice of appeal stays the effectiveness of any determination).

By April of 2011, nearly two years after the July 1 effective date for the 2009 amendments to the Act, the nonunion contractors were involved in five unresolved appeals related to those amendments, four pending before the State of New Mexico First Judicial District Court and one before the LIC. *See* Mot. Ex. C, 2011 Petition for Writ of Mandamus ¶ 14. The Director had never set prevailing wages according to CBAs, and had not set new rates at all since determining the 2010 rates using the old methods in 2009. *Id.* ¶ 45; *N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶ 3. Consequently, on April 13, 2011 the NMBCTC filed a Petition for Writ of Mandamus asking the New Mexico Supreme Court to compel the Director to set prevailing wage and benefit rates in accordance with CBAs as required by the Act. *See* Mot. Ex. C, 2011 Petition for Writ of Mandamus. The Court denied the writ on June 15, 2011. *See* Mot.

Ex. D, 2011 Order Denying Writ of Mandamus; *N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶ 3. However, the denial was not on the merits of the legal issue, but in reliance on statements made in oral argument by counsel for the Secretary that a writ of mandamus was not necessary to achieve compliance with the Act. *N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶ 3. The Secretary's counsel assured the Court that the Secretary was "intent on getting this done" and that the Director could set new rates within four or five months. *Id.*

In March 2012, the Secretary promulgated new regulations and amended others implementing the Act, but did not set new prevailing wage and benefit rates. *See id.* ¶¶ 3–4. NMBCTC challenged these regulations before the LIC, but waived its right to stay the effectiveness of the rules during the appeal process in the interest of having "the Department . . . update the prevailing rates in some manner as soon as possible given that the current rates are based on 2009 data and have not been updated for more than two years." Mot. Ex. E, 2012 Notice of LIC Appeal. NMBCTC also requested that the LIC waive any automatic stay of the regulations. *Id.* But the Director still did not set new rates. *N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶ 3. The LIC denied the appeal on July 29, 2014, *see* Mot. Ex. F, 2014 LIC Order on Appeal, and NMBCTC sought judicial review of the denial in the State of New Mexico Second Judicial District Court, *see* Mot. Ex. G, 2014 Notice of Appeal; *N.M. Bldg. & Constr. Trades Council v. Bussey*, Case No. D-202-CV-2014-05512. By June of 2015, the state-court litigation was still pending and the Director had yet to set new prevailing wage and benefit rates despite the prior assurances made to the New Mexico Supreme Court. *See N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶¶ 3–4.

Consequently, NMBCTC filed a second Petition for Writ of Mandamus with the New Mexico Supreme Court in 2015, again asking the Court to compel the Director to set prevailing

wage and benefit rates in accordance with CBAs. *Id.* ¶¶ 2–3. This time the Court granted the writ and issued an opinion holding that "under the Act, specifically Section 13-4-11, the Director has a mandatory, nondiscretionary duty to set prevailing wage and prevailing benefit rates the same as those negotiated in applicable CBAs." *Id.* ¶ 21. The Court ordered the Director to set rates in accordance with CBAs within 30 days of the issuance of the June 15, 2015 opinion, and to continue to set rates in that manner. *Id.*

The Director's persistent failure to comply with the amended Act resulted in the use of prevailing wage rates that were not equivalent to CBAs or even updated from the 2009 determinations until after the writ of mandamus issued in June of 2015. Compl. ¶¶ 19–20. Plaintiffs were paid less and received fewer benefits than they should have for the work they performed on public works projects from 2009 until the date of the Complaint because the minimum wages and benefits guaranteed by their contracts were lower than the prevailing rates required by the Act. Compl. ¶¶ 21–23. Plaintiffs assert that Defendants' actions violated their constitutional rights to substantive and procedural due process. Compl. ¶¶ 8, 42–43, 48.

## II.  LEGAL STANDARD

Plaintiffs bring their due-process claims under the Fourteenth Amendment and 42 U.S.C. § 1983. *See* Compl. ¶¶ 8, 37, 48. The Court has original jurisdiction over these claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). Defendants answered the Complaint, *see* DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT FOR VIOLATION OF PROCEDURAL AND SUBSTANTIVE PROCEDURAL [sic] DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983 (Doc. No. 9), but then moved for judgment on the pleadings under Fed. R. Civ. P. 12(c), asserting that qualified immunity requires the Court to dismiss Plaintiffs' claims. Mot. at 1.

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). The Court will "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff[s]." *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000). The Court will not consider materials outside of the pleadings other than those central to Plaintiffs' claims that are referenced in the Complaint and court documents of which the Court may take judicial notice. *See Pace*, 519 F.3d at 1072–73 (in resolving a motion to dismiss, district courts may properly consider documents referred to in the complaint and central to the plaintiff's claim, and may take judicial notice of adjudicative facts); *St. Louis Baptist Temple, Inc.*, 605 F.2d at 1172 ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

Dismissal on the pleadings is generally appropriate only if "'it appears beyond doubt that [P]laintiff[s] can prove no set of facts in support of [the] claim[s] which would entitle [them] to relief.'" *Ramirez*, 222 F.3d at 1240 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). But "[t]o overcome a defendant's claim of qualified immunity in the context of a Rule 12(c) motion, a plaintiff's pleadings must establish both that the defendant's actions violated a federal constitutional or statutory right and that the right violated was clearly established at the time of the defendant's actions." *Id.*

### III. DISCUSSION

No State may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]o prevail on either a procedural or substantive due

9

process claim, [Plaintiffs] must first establish that [Defendants'] actions deprived [them] of a protectible property interest." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Such property interests are "created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract." *Id.* at 1079 (internal quotation marks omitted). To invoke the protections of due process, Plaintiffs must have a "'legitimate claim of entitlement'" to the wages and benefits they seek, rather than an "'abstract need or desire'" or a "'unilateral expectation.'" *Id.* at 1078–79 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Plaintiffs contend that the NMPWMWA creates a property interest in wages and benefits equivalent to those negotiated by union workers through CBAs. Compl. ¶¶ 18, 47. Defendants characterize the Act as merely a procedural framework for rate-setting. Mot. at 9–10. However, in addition to setting forth procedures for the determination of wage rates, the NMPWMWA mandates that the minimum wages and benefits paid to laborers or mechanics on public works projects must be set "at the same wage rates and fringe benefit rates used in collective bargaining agreements." § 13-4-11(A)–(B); *N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶¶ 13–15. While "[d]etailed procedures in a state statute or regulation are not, by themselves, sufficient to create a property interest," substantive restrictions on discretion will do so. *Greene v. Barrett*, 174 F.3d 1136, 1140 (10th Cir. 1999). The Court therefore concludes that Plaintiffs have a property interest in CBA-level wages and benefits created by the NMPWMWA and protected by the Fourteenth Amendment.

Plaintiffs allege that they were deprived of these wages and benefits due to the Director's failure to set prevailing rates according to CBAs. Defendants note that Plaintiffs have not alleged any specific action by the Secretary which caused a constitutional deprivation. Mot. at 6. The

only mention of Bussey in the Complaint simply describes her position as Secretary. *See* Compl. ¶ 9. "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[D]efendant-supervisors may be liable under § 1983 [only] where an affirmative link exists between the unconstitutional acts by their subordinates and their adoption of any plan or policy . . . showing their authorization or approval of such misconduct." *Dodds v. Richardson*, 614 F.3d 1185, 1200–01 (10th Cir. 2010) (internal quotation marks omitted). Plaintiffs have not alleged any "affirmative link" demonstrating that Bussey authorized or approved of Dean's noncompliance with the Act. Consequently, the Court concludes that Bussey is entitled to dismissal of the claims against her and will proceed to analyze Plaintiffs' constitutional claims only against the Director.

A.   **Procedural Due Process**

"Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991). Plaintiffs argue that Dean's failure to follow the statutorily-mandated procedure for setting the prevailing wages and benefits was a violation of Plaintiffs' right to procedural due process. Compl. ¶¶ 48–51. But as the Director points out, a violation of procedures required by state law is not a per se constitutional violation of due process. Mot. at 8–10; *see Onyx Props. LLC v. Bd. of Cty. Comm'rs of Elbert Cty.*, 838 F.3d 1039, 1044 (10th Cir. 2016). "The fundamental requirement of [procedural] due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Therefore, the Court must determine whether

Plaintiffs have sufficiently alleged that Dean's actions deprived Plaintiffs of wages and benefits equivalent to those in CBAs without the opportunity to meaningfully challenge that deprivation.

Plaintiffs have alleged that the prevailing wage determinations issued by the Director between 2009 and the date of the Complaint were lower than the rates required by the NMPWMWA, and consequently that the wages received by Plaintiffs for work they performed during that time period were less than they would have been had the Director complied with the Act. Compl. ¶¶ 21–23. The Court concludes that these allegations sufficiently describe actions by Dean that deprived Plaintiffs of a protected property interest, but more is required—Plaintiffs must show that they were deprived of the interest without an adequate process by which they could obtain review of the deprivation.

The Director asserts that the history of litigation over this provision demonstrates that Plaintiffs had ample opportunity to challenge their alleged deprivation. *See* Mot. at 2–6, 11–12. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

> The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.

*Id.* at 126. While much of the litigation Dean refers to was initiated by nonunion contractors, not by Plaintiffs, the Act does provide a right of appeal for any interested person from any action of the Director. *See* § 13-4-15(A). Plaintiffs do not allege anywhere in the Complaint that they lacked the opportunity to challenge the 2009 rates used by the Director. The Court therefore

concludes that Dean is entitled to qualified immunity on the procedural due process claim because Plaintiffs failed to allege a constitutional violation.

**B.     Substantive Due Process**

"[S]ubstantive due process, on the other hand, guarantees that the state will not deprive a person of [a protected interest] for an arbitrary reason regardless of how fair the procedures are that are used in making the decision." *Archuleta*, 936 F.2d at 490. Plaintiffs allege that the Director acted arbitrarily, capriciously, and with deliberate indifference to their rights by failing to set prevailing rates in accordance with the Act. Compl. ¶¶ 42–43.

Due process protection has "[h]istorically ... been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "An arbitrary deprivation of a property right may violate the substantive component of the Due Process Clause if the arbitrariness is extreme." *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 512–13 (10th Cir. 2011). But "'a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.'" *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)). The "ultimate" standard for determining whether there has been a substantive due process violation is "whether the challenged government action shocks the conscience of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (quotations and citations omitted).

The Director asserts that "there is no conscience-shocking behavior" in his refusal to implement the Act prior to June 2015 because there was a "genuine legal dispute" and Defendants were the "targets of constant litigation by one party or another who [wa]s dissatisfied with the 2009 legislation and subsequent administrative attempts to implement it." Mot. at 13.

13

This broad-brush argument fails to persuade. The inaction may have been excusable in 2009 and 2010 when nonunion contractors were challenging the Act. But by June 2011 the relevant legal dispute was essentially resolved when, to avoid a writ of mandamus, the Secretary's counsel informed the New Mexico Supreme Court that the Director could set new wage and benefit rates within four or five months because the Secretary was "intent on getting this done." *See N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶ 3. Later legal challenges specifically requested that new rates not be stayed, *see* Mot. Ex. E, 2012 Notice of LIC Appeal, but the Director still did not update the wage and benefit rates from those using 2009 data until after the New Mexico Supreme Court granted the writ of mandamus in June 2015.

The Court believes that Plaintiffs have adequately alleged that the Director deliberately and arbitrarily deprived them of a protected property right by failing to fulfill his statutory duty for four years, even after the New Mexico Supreme Court was assured in June of 2011 that he would do so. "Time and opportunity to deliberate are additional factors affecting the standard of fault." *Sherwood v. Okla. Cty.*, 42 F. App'x 353, 358 (10th Cir. 2002). "Where there is time for thoughtful deliberation, defendants are held to a higher standard." *Id.* at 359. The Court therefore concludes that the Director's alleged actions "could be conscience shocking, depending, of course, on further context as provided by discovery."[2] *See Currier v. Doran*, 242 F.3d 905, 920 (10th Cir. 2001) (evaluating a substantive due process claim in the context of a motion to dismiss based on qualified immunity).

### C. Clearly Established Right

Although Plaintiffs have adequately alleged a constitutional violation, they must demonstrate that their due process property right was clearly established at the time of the

---

[2] Discovery has been stayed pending the disposition of Defendants' motion to dismiss. The Court expresses no opinion at this point on what the facts may disclose after discovery is completed.

deprivation to overcome Dean's claim of qualified immunity. *Greene*, 174 F.3d at 1142. The Director asserts that he is entitled to qualified immunity because Plaintiffs' right to be paid wages and benefits set according to CBAs was not clearly established prior to the New Mexico Supreme Court's interpretation of the Act in the writ of mandamus issued on June 15, 2015. Reply at 5–9. Plaintiffs maintain that their right is clear in the NMPWMWA itself, so that no prior judicial interpretation is required to defeat the Director's claim. Resp. at 9.

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Although the very action in question need not have been previously declared unlawful, 'in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (quoting *Anderson*, 483 U.S. at 640). This may require a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other courts. *See id.* However, in determining whether a right is clearly established, a "court should inquire 'whether the law put officials on fair notice that the described conduct was unconstitutional' rather than engage in 'a scavenger hunt for cases with precisely the same facts.'" *J.H. ex rel. J.P. v. Nation*, 61 F.Supp.3d 1176, 1200 (D. N.M. 2015) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

The Tenth Circuit Court of Appeals has explained that:

> In *Lanier*, the Supreme Court noted that "the qualified immunity test is simply the adaptation of the fair warning standard [of criminal law]" to government officials facing civil liability. 520 U.S. at 270–71, 117 S.Ct. 1219. The fair warning standard requires the statute under which a defendant is charged, "either standing alone or as construed by the courts," make it reasonably clear that the defendant's conduct was criminal. *Id.* at 267, 117 S.Ct. 1219 (emphasis added). Thus, it follows that if the text of a statute clearly establishes the contours of a right, the statute alone is sufficient to put an objectively reasonable official on notice that conduct within the plain text of the statute violates that right for purposes of qualified immunity. *See Greene v. Barrett*, 174 F.3d 1136, 1142–43

(10th Cir. 1999) (property right was not clearly established, in part, because state statute was ambiguous).

*Robbins v. Wilkie*, 433 F.3d 755, 771 (10th Cir. 2006), *reversed on other grounds*, *Wilkie v. Robbins*, 551 U.S. 537 (2007). "[A] statutorily-created right is clearly established when the statute is subject to no other reasonable interpretation." *Tri-State Contractors, Inc. v. Fagnant*, 393 F. App'x 580, 586 (10th Cir. 2010).

The Director asserts that the long history of litigation over the Act demonstrates that it is ambiguous and therefore that it did not clearly establish Plaintiffs' property right. Mot. at 12. He relies on *Greene*, in which the Tenth Circuit interpreted the language of a Wyoming statute and concluded that although it created a property interest, it did not clearly establish that property right. *Greene*, 174 F.3d at 1143. In *Greene*, a deputy sheriff, formerly employed at the rank of administrative lieutenant, brought a § 1983 action based on the sheriff's demotion of the deputy sheriff to sergeant without a right of review. *Id.* at 1139. The change in status was allegedly due to a departmental reorganization, but the plaintiff believed that in reality it was retaliation for his political support of an opposing candidate in the election for sheriff. *Id.* Wyoming law prohibited a deputy sheriff from being "discharged, reduced in rank, or suspended without pay except for cause and after notice and opportunity for a hearing." *Id.* at 1140–41. But the statute contained an exception allowing employment discharges for the purposes of office reorganization or budget constraints. *Id.* at 1141. The Court concluded that this exception did not apply to reductions in rank, and therefore that the statute created a property interest in continued employment at a certain rank because it sufficiently restricted the sheriff's discretion to demote a deputy sheriff. *See id.* at 1140–41. Nevertheless, the Court held that the defendant sheriff was entitled to qualified immunity because the language of the statute was ambiguous as to how demotions for

16

the purpose of reorganization were to be addressed and there was no case on that issue, allowing for other reasonable interpretations of the law at the time of the demotion. *Id.* at 1143.

Plaintiffs respond that their claim is distinguishable from *Greene* because the Act is clear and unambiguous, making the unlawfulness of the Director's actions apparent even before the New Mexico Supreme Court issued its opinion. Resp. at 1, 4, 9. Plaintiffs maintain that the plain language of the statute clearly establishes their property right and that the 2015 writ of mandamus further demonstrates that § 13-4-11(B) was never ambiguous. Resp. at 4. Mandamus is appropriate only to compel the performance of a mandatory, non-discretionary duty that is clear and indisputable. *See N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶ 5. The New Mexico Supreme Court concluded that the Act clearly and unambiguously required the Director to set prevailing wage rates according to CBAs. *See id.* ¶¶ 11–15.

The Court agrees. The plain language of the NMPWMWA states that "[t]he director shall determine prevailing wage rates and prevailing fringe benefit rates for respective classes of laborers and mechanics employed on public works projects at the same wage rates and fringe benefit rates used in collective bargaining agreements." § 13-4-11(B). Unlike the statute analyzed in *Greene* and contrary to the Director's characterization of the Act, the additional rights to submit data and receive due regard contained in § 13-4-11(B)(2)–(3) are not exceptions to § 13-4-11(B), but instead are supplemental provisions that can be applied concurrently. *See N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶ 12. The Court therefore concludes that these additional rights are limited to information influencing the choice of a comparable CBA because they would otherwise contradict the mandate of § 13-4-11(B). *See N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶ 12 ("When considered as a whole, it is clear that these subsections do not transform the Director's mandatory, nondiscretionary duty in Section

13-4-11(B) to a discretionary one."); *Time Warner Entertainment Co., L.P. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1050 (10th Cir. 2004) (statutes must be read to harmonize and give effect to all provisions).

This is not a case where qualified immunity depends upon the applicability of some broader legal standard to a specific set of facts, so that case law approving the application should reasonably be required before officials can be held liable. There is no dispute that Plaintiffs are the intended beneficiaries of the Act, which controls the minimum wages and benefits that may be paid under state contracts. The only reasonable interpretation of the Act is that it guarantees that those minimum wage and benefit rates must be equivalent to the rates negotiated in CBAs. Additionally, Defendants must have known this when they agreed in front of the New Mexico Supreme Court in 2011 to set those rates accordingly and asserted that mandamus was not necessary because they were "intent on getting this done." *N.M. Bldg. & Constr. Trades Council*, 2015-NMSC-023, ¶ 3. The Director cannot now claim otherwise based solely on the persistence of the nonunion contractors in challenging the 2009 amendments and the Director's own refusal to comply with the amended Act. In attempting to portray the meaning of the statute as unclear, the Director asserts that Judge Johnson's interpretation was contradicted by the New Mexico Supreme Court. Mot. at 10. But Judge Johnson never decided the merits of the claim, and did not analyze the language of the Act. Any statements he made in setting forth the applicable law are at most dicta. The Court therefore concludes that the Act provides a property right that was clearly established at the time of Plaintiffs' alleged deprivations. In light of this conclusion, the Director is not entitled to qualified immunity on Plaintiffs' substantive due process claim.

IT IS THEREFORE ORDERED that:

(1) DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT BASED UPON QUALIFIED IMMUNITY (Doc. No. 17) is GRANTED as to Defendant Bussey;

(2) DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT BASED UPON QUALIFIED IMMUNITY (Doc. No. 17) is GRANTED as to Defendant Dean regarding Plaintiffs' procedural due process claim; and

(3) DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT BASED UPON QUALIFIED IMMUNITY (Doc. No. 17) is DENIED as to Defendant Dean regarding Plaintiffs' substantive due process claim.

_____
SENIOR UNITED STATES DISTRICT JUDGE